IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARYANN SIVONGXAY,<br><br>       Plaintiff,<br><br>  vs.<br><br>MEDCAH, INC.,<br><br>       Defendant. | CIVIL NO. 16-00415 DKW-KSC<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO VIOLATIONS 1–3 OF COUNT I AND AS TO VIOLATIONS 1–5 OF COUNT II; AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO VIOLATIONS 1–3 OF COUNT I** |

## INTRODUCTION

Sivongxay alleges that MEDCAH, Inc., a debt collection agency, violated the federal Fair Debt Collection Practices Act ("FDCPA") and related Hawaii Revised Statutes ("HRS") by attempting to collect prejudgment interest on her unpaid debts at the statutory rate of 10% where the original contracts with her creditor-service providers either did not provide for any fixed rate of interest or provided an interest rate greater than the rate set forth in HRS § 478-2.   Sivongxay further alleges that MEDCAH's debt collection practices were false or deceptive due to its "confusing" account numbering system, whereby MEDCAH assigned its own account number and client reference number to her unpaid debts, and that MEDCAH improperly reported false amounts due on the accounts to a credit bureau.

Because MEDCAH applied and attempted to collect a 10% per year rate of interest on Sivongxay's unpaid debts to her original creditors, as authorized by the service provider agreements and as permitted under the state's interest laws, MEDCAH is entitled to summary judgment on all of Plaintiff's interest-related claims.   MEDCAH has also met its burden on summary judgment with respect to Sivongxay's claims that both MEDCAH's account numbering system and its credit reporting practices violated federal or state law.   Consequently, because MEDCAH is entitled to summary judgment on Violations 1–3 of Count I and Violations 1–5 of Count II of the Amended Complaint, the Court GRANTS MEDCAH's Motion for Partial Summary Judgment (Dkt. No. 44) and DENIES Sivongxay's Motion for Partial Summary Judgment (Dkt. No. 46) for the reasons detailed below.[1]

---

[1]MEDCAH additionally moves to strike Plaintiff's Separate and Concise Statement of Facts In Support of Her Response In Opposition To Defendant Medcah, Inc.'s Motion For Partial Summary Judgment ("Motion to Strike") because Sivongxay's Separate and Concise Statement of Facts ("CSOF") was filed via CMECF two hours after the filing deadline.   Dkt. No. 73.   Counsel for Sivongxay represented on the record at the October 20, 2017 hearing that he experienced computer problems and was unable to timely file the CSOF (Dkt. No. 68) after timely filing Sivongxay's opposition to MEDCAH's Motion (Dkt. No. 67).   In light of counsel's representation, which the Court accepts, and the lack of prejudice to MEDCAH, the Court, in its discretion, DENIES the Motion to Strike.   *See* Local Rule 7.4 ("Any opposition or reply that is untimely filed may be disregarded by the court or stricken from the record."); *Flynn v. Marriott Ownership Resorts, Inc.*, 165 F. Supp. 3d 955, 964 (D. Haw. 2016) ("Although this Court has the discretion to disregard or strike Defendants' reply, it declines to do so because there is no indication that Plaintiffs were prejudiced as a result of the late filing of the reply.") (citing Local Rule 7.4).

# BACKGROUND

## I.   Factual Background

MEDCAH was retained by Waianae Coast Comprehensive Health Center, Pacific Radiology Group, Inc., The Radiology Group, Oceanic Time Warner Cable nka Spectrum, and Cardiology Associates, Inc. to collect more than twenty of Sivongxay's unpaid debts related to medical and utility services.   On April 27, 2015, MEDCAH sent Sivongxay several collection letters identifying Waianae Coast Comprehensive Health Center as the original creditor, listing a "MEDCAH account #" as well as a "creditor account #," and providing the account balance, interest due, and total balance due to MEDCAH.   *See* Am. Compl. ¶¶ 8–30, Ex. 1 (4/27/15 Collection Letters), Dkt. No. 28-1.

On or around December 18, 2015,[2]  MEDCAH sent Sivongxay an account summary setting forth balances owed on MEDCAH accounts assigned from creditors Waianae Coast Comprehensive Health Center, Pacific Radiology Group, The Radiology Group, Oceanic Time Warner Cable, and Cardiology Associates, and which included MEDCAH's addition of interest and fees to the unpaid accounts.

---

[2]Although the account summary is undated, MEDCAH does not dispute Sivongxay's allegation that she received the communication from MEDCAH on December 18, 2015.   *See* MEDCAH Reply and Obj. to Pl.'s CSOF ¶ 2, Dkt. No. 66.

*See* Am. Compl. ¶ 31, Ex. 2 (12/18/15 Account Summary), Dkt. No. 28-2.[3]   For

each account balance listed, the December 18, 2015 communication identified the

name of the original creditor, listed a "MEDCAH account #" as well as a "creditor

account #," and provided the account balance, interest due, and total balance due to

MEDCAH.   *Id.*

     Sivongxay made no payments to MEDCAH in response to these

communications and, in January or February of 2016, MEDCAH reported

Sivongxay's principal outstanding balance owed to her original creditors to

Experian, a consumer credit reporting agency.   Am. Compl. ¶¶ 32–33.   Sivongxay

pulled her Experian credit history on March 27, 2016, and alleges that the credit

report shows MEDCAH reporting "to Experian that Plaintiff owed a different and

greater amount than what Ms. Sivongxay actually owes," Am. Compl. ¶ 36, despite

the undisputed fact that MEDCAH reported the same principal amounts to Experian

listed on the account summary received by Sivongxay on December 18, 2015.   *See,*

*e.g.*, Pl.'s CSOF ¶ 3, Dkt. No. 47 ("Despite no payments being made, Defendant

reported that only the principal balances were owed [in the] Experian Report in

January and/or February 2016."); MEDCAH Reply and Obj. to Pl.'s CSOF ¶ 3, Dkt.

---

[3]The December 2015 account summary lists a total balance due of $1,677.24 on the over twenty accounts assigned to MEDCAH by Sivongxay's five original creditors.   *See* Am. Compl., Ex. 2 (12/18/15 Account Summary), Dkt. No. 28-2.

No. 66 ("The principal amount listed in the account summary is the same as the principal amount reported to the credit bureau.").

Sivongxay disputed the unpaid amounts and requested verification from MEDCAH sometime in June 2016.   Am. Compl. ¶ 42.   She received a June 24, 2016 letter in response, informing her that "[i]nterest accrues daily on all accounts to the extent allowed by law," with an attached list of all outstanding accounts as of that date.   Am. Compl. ¶¶ 43–48, Ex. 4 (6/24/16 Letter), Dkt. No. 28-4.[4]   The June 24, 2016 letter includes additional "supportive original creditor documents," which Sivongxay alleges do not "show the imposition of any interest to the alleged accounts by the original creditors."   Am. Compl. ¶¶ 50–51.

MEDCAH's President and Owner, Genevieve Freeman, attests that for each of Sivongxay's unpaid accounts, MEDCAH applied an annual interest rate of 10% under HRS § 478-2 because the underlying agreements documenting the debts either do not state a fixed interest rate or state an interest rate greater than 10% per annum. Decl. of Genevieve Freeman ¶¶ 7–8.   For example, the terms and conditions of Sivongxay's Oceanic Time Warner Cable services agreement provide, in part, "[w]e are entitled to charge you interest on past due amounts," but the agreement does not specify the rate of interest.   Freeman Decl. ¶¶ 9–10 (citing Ex. E, Dkt. No. 41 at 4–

---

[4]The June 24, 2016 account ledger lists a total balance due of $1,960.08 on the over twenty accounts assigned to MEDCAH by Sivongxay's five original creditors.   *See* Am. Compl. ¶ 48, Ex. 4 (6/24/16 Letter), Dkt. No. 28-4.

20).   The terms and conditions of services with Pali Momi Medical Center, applicable to amounts owed to Pacific Radiology Group and The Radiology Group, likewise state: "Should the account be referred to an attorney or collection agency for collections, I agree to pay any reasonable attorney's fees, collection expenses and interest at the statutory rate on all delinquent accounts whether or not the account is referred to a collection agency[,]" but the terms do not state a fixed rate of interest.   Freeman Decl. ¶¶ 12–13 (citing Ex. E, Dkt. No. 41 at 21–28).   Nor does Sivongxay's Waianae Coast Comprehensive Health Center patient registration form provide a specific interest rate.   Freeman Decl. ¶ 14 (citing Ex. E, Dkt. No. 41 at 28).

Cardiology Associates was the only one of Sivongxay's creditors to specify an interest rate in the underlying services agreement: "a late monthly fee of 1.5% or 50 cents minimum [is] charged to all accounts past 60 days."   Freeman Decl. ¶ 15 (citing Ex. E, Dkt. No. 41 at 2).   Although the physician services agreement provided for the late monthly fee of 1.5% (or an annual interest rate of 18%), MEDCAH instead assessed a lower rate of 10% per annum on Sivongxay's unpaid Cardiology Associates debt.   Freeman Decl. ¶ 7.

Sivongxay asserts that when her accounts were consolidated for collection on behalf of the original creditors, MEDCAH began charging 10% on all of the accounts, notwithstanding the service providers' failure to do so.   She notes that

MEDCAH added this interest to her account balances, and intended to retain any such interest collected, rather than remitting it to the original creditor.   According to Freeman, MEDCAH's President, when it collects payment and interest from a debtor, MEDCAH posts the payment to the debtor's account, remits the negotiated amount to its client, and keeps the interest and its commission fee.   Pl.'s Ex. A, 8/2/17 Freeman Dep. Tr. at 79–80, Dkt. No. 46-1.   If the debtor instead repays the principal amount to the original creditor, MEDCAH writes off the unpaid interest and does not make further attempts to collect from the debtor.   8/2/17 Freeman Dep. Tr. at 78.

## II.   <u>Procedural Background</u>

Plaintiff filed her Complaint on July 28, 2016, alleging multiple violations of the FDCPA, 15 U.S.C. §§ 1692e and 1692f, and Hawaii's Unfair or Deceptive Acts and Practices Act.   Dkt. No. 1.   Sivongxay filed an Amended Complaint on July 5, 2017, including new claims that MEDCAH attempted to collect the debts after being served with the initial Complaint by calling her directly, despite knowing that she was represented by legal counsel, in violation of 15 U.S.C. § 1692c(a)(2) and HRS § 443B-19(5).   Am. Compl. ¶¶ 85–89, 126–29, Dkt. No 28.   The Amended Complaint includes two Counts for violations of the FDCPA and HRS, with each Count broken down into separately numbered violations, summarized as follows:

**Count I** (FDCPA Violations):

1.  *False or Misleading Representations*: Demanding Interest and Assigning New Account Numbers in violation of Section 1692e
2.  *False or Misleading Representations*: Demanding Interest in violation of Section 1692e(2)
3.  *Collection of Illegitimate Interest*: in violation of Section 1692(f)(1)
4.  *Communications After Attorney Representation*: in violation of Section 1692c(a)(2)

**Count II** (HRS Violations):

1.  *False or Misleading Representations*: Demanding Interest in violation of HRS § 443B-18(5)
2.  *False or Misleading Representation*: Demanding Fees and Interest in violation of HRS § 443B-18(8)
3.  *Use of Unfair Practices In Attempt to Collect a Debt*: Demanding Fees and Interest in violation of HRS § 443B-19(4)[5]
4.  *Use of Unfair Practices In Attempt to Collect a Debt*: Demanding Fees in violation of HRS § 443B-19(3)
5.  *Use of Unfair Practices In Attempt to Collect a Debt*: Demanding Fees and Interest in violation of HRS § 443B-19(4)
6.  *Use of Unfair or Unconscionable Means In An Attempt to Collect a Debt*: Contacting a Represented Debtor in violation of HRS § 443B-19(5)

Am Compl. ¶¶ 57–129.

The parties each move for summary judgment on Count I, Violations 1 through 3, and MEDCAH additionally moves as to Violations 1 through 5 of Count II.

---

[5]Plaintiff explains that this portion of the Amended Complaint includes a typographical error as to the subsection number, mistakenly asserting a violation of HRS § 443B-19(2), which Plaintiff agrees is inapplicable because she has not filed for bankruptcy.  *See* Pl.'s Mem. in Opp'n at 14–15, Dkt. No. 67.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   With these principles in mind, the Court turns to the merits of the motions for partial summary judgment.

## DISCUSSION

Sivongxay maintains that because her original creditors did not pursue interest on her debts, and because MEDCAH has no independent right to interest, MEDCAH's assessment of interest at 10% per year was a collection fee that violated the FDCPA.   The Court disagrees.   MEDCAH neither attempted to collect unauthorized interest, nor did it make false, deceptive, or misleading representations in its collection efforts.   Because the underlying creditor agreements providing for interest either did not specify a fixed rate of interest or provided for a higher rate, MEDCAH did not violate federal or state law when it applied interest at the statutory rate of 10% per annum under HRS § 478-2, and MEDCAH is accordingly entitled to summary judgment on all of Sivongxay's interest-related causes of action.

MEDCAH is further entitled to judgment in its favor on Sivongxay's claims relating to its account numbering system and credit reporting practices based upon the particular circumstances and the record presented.

## I.     MEDCAH Is Entitled To Summary Judgment On All Of Sivongxay's Interest-Related Claims In Counts I And II

Sivongxay alleges multiple violations of the FDCPA and HRS based on the premise that MEDCAH improperly charged interest on her unpaid accounts.   She asserts that MEDCAH runs afoul of the relevant statutes by collecting amounts not authorized by the agreements creating the debt or permitted by law.[6]   Pl.'s Mem. in Opp'n at 2, Dkt. No. 67.   For the reasons that follow, the Court concludes instead that MEDCAH properly applied interest at the statutory rate both to her unpaid

---

[6]The FDCPA prohibits debt collectors from using false, deceptive, or misleading representations in connection with the collection of any debt, listing the following as violations of that prohibition: "(2) The false representation of—(A) the character, amount, or legal status of any debt; or . . . The use of any false representation or deceptive means to collect or attempt to collect any debt...."   15 U.S.C. § 1692e.   It also prohibits debt collectors from using unfair or unconscionable means to collect or attempt to collect a debt, stating that prohibition is violated by the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."   15 U.S.C. § 1692f(1).   The parties do not dispute that Sivongxay is a consumer, her debt is a consumer debt, and MEDCAH is a debt collector for purposes of the FDCPA.   *See* 15 U.S.C. § 1692.

Hawaii law similarly prohibits a collection agency from using fraudulent, deceptive, or misleading representations or means to collect or attempt to collect debts, including false representations as to the character, extent, or amount of a claim against a debtor.   *See* HRS § 443B-18(5).   Section 443B-19 prohibits collection agencies from using unfair or unconscionable means to collect or attempt to collect a claim against a debtor, including the collection or attempt to collect interest, charges, fees, or expenses unless expressly authorized by the agreement creating the obligation or by law.   HRS § 443B-19.   Section 443B-20 provides that a collection agency's violation of Chapter 443B "shall constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce for the purpose of section 480-2."   HRS § 443B-20.

accounts that did not state a fixed rate of interest and also to the one account

providing for a higher fixed rate of interest.

### A.    MEDCAH Properly Applied Interest At The Statutory Rate To The Accounts With No Fixed Rate Of Interest

MEDCAH sought to collect Sivongxay's unpaid debts based on underlying

agreements with her original creditors, several of which expressly provided for

interest, but did not specify an interest rate.   *See* Freeman Decl. ¶¶ 7–14.   In these

circumstances, MEDCAH applied the statutory interest rate of 10% per annum,

pursuant to HRS § 478-2.   HRS § 478-2 states in part:

> When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten per cent a year, except that, with respect to obligations of the State, interest shall be allowed at the prime rate for each calendar quarter but in no event shall exceed ten per cent a year, as follows:
>
>> (1) For money due on any bond, bill, promissory note, or other instrument of writing, or for money lent, after it becomes due;
>> (2) For money due on the settlement of accounts, from the day on which the balance is ascertained;
>> (3) For money received to the use of another, from the date of a demand made; and
>> (4) For money upon an open account, after sixty days from the date of the last item or transaction.

Under its plain terms, "interest shall be allowed" where the requirements of the

statute are met.

MEDCAH correctly asserts that it may apply and pursue interest at 10% per

year because Sivongxay's unpaid accounts represent "money due on any . . .

11

promissory note, or other instrument of writing" under Section 478-2(1) where each account is based on an assignment from the original creditor to MEDCAH, or under Section 478-2(2) as "money due on the settlement of accounts" where MEDCAH seeks to settle unpaid accounts on behalf of the respective service providers.[7] MEDCAH was, in fact, authorized to collect interest on these accounts by virtue of the underlying agreements with Sivongxay's original creditors, who assigned the accounts to MEDCAH for collection.   *See* Freeman Decl.¶¶ 7–15; Ex. E, Dkt. No. 41 at 1–28.   MEDCAH may therefore look to HRS § 478-2 to set the applicable rate of interest where the agreements do not specify a fixed rate.   No authority holds otherwise.

In *Diaz v. Kubler Corp.*, 785 F.3d 1326 (9th Cir. 2015), the Ninth Circuit rejected arguments similar to those raised by Sivongxay, under the FDCPA and California's Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code §§ 1788–1788.33.   *Diaz* involved a suit by a debtor against a debt collector, alleging that by sending a collection letter that sought 10% interest on the debt, the debt collector violated 15 U.S.C. § 1692f(1) and thereby also violated the Rosenthal Act.   *Diaz*, 785 F.3d at 1327.   Noting that Section 1692f(1) prohibits debt collectors from trying to collect any amount that is not "expressly authorized by the

---

[7]Sivongxay's unpaid accounts also represent "money due on any bill . . . after it becomes due" under Section 478-2(1) because the accounts are each traceable to an unpaid medical or utility "*bill*" assigned by the original creditor to MEDCAH.

agreement creating the debt or permitted by law," the *Diaz* court explained that a "debt collector does not violate this provision if the amounts it seeks are authorized by state law."   *Id.* at 1328 (citing *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011); *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 770 (8th Cir. 2001)).

As MEDCAH notes, the amounts it seeks here are authorized both by the underlying agreements creating the debt *and* by state law—HRS § 478-2. MEDCAH is authorized by the underlying agreements to collect interest assigned to it by the original creditors, and because no rate is specified with respect to those creditors, *see* Freeman Decl. ¶¶ 9–14 (citing Ex. E, Dkt. No. 41 at 4–28),[8] MEDCAH applied the annual interest rate provided by HRS § 478-2 (stating that interest "shall be allowed at the rate of [10% per year]," "[w]hen there is no express written contract fixing a different rate").   That is plainly what state and federal law allow it to do.

---

[8]Sivongxay's Oceanic Time Warner Cable services agreement provides, in part, "[w]e are entitled to charge you interest on past due amounts," but the agreement does not specify the rate of interest. Freeman Decl. ¶¶ 9–10 (citing Ex. E, Dkt. No. 41 at 4–20).   The terms and conditions of services applicable to Pacific Radiology Group and The Radiology Group state, "[s]hould the account be referred to an attorney or collection agency for collections, I agree to pay any reasonable attorney's fees, collection expenses and interest at the statutory rate on all delinquent accounts whether or not the account is referred to a collection agency[,]" but the terms do not state a fixed rate of interest. Freeman Decl. ¶¶ 12–13 (citing Ex. E, Dkt. No. 41 at 21–28).   Sivongxay's Waianae Coast Comprehensive Health Center patient registration form likewise does not provide a specific interest rate.   *See* Freeman Decl. ¶ 14 (citing Ex. E, Dkt. No. 41 at 28).

Sivongxay advances the theory that MEDCAH or the creditors it represents must first obtain a court-ordered judgment before pursuing interest on unpaid debts. *See* Pl.'s Mem. in Opp'n at 7, Dkt. No. 67 ("Medcah has not obtained a judgment against Ms. Sivongxay and has never sought any court action against her.   Medcah demanded interest on the accounts without a court order, violating Hawaii law and the FDCPA in the process.").   She asserts that only with a judgment in hand, awarded by a court pursuant to HRS § 636-16, would MEDCAH be authorized by law to pursue prejudgment interest.

That contention makes little sense and, not surprisingly, has been soundly rejected—

> To hold that a debt collector must have a judgment in hand in order for the relief it seeks to be "permitted by law" would lead to untenable results, given the fact that § 1692f(1) can be violated by the filing of a lawsuit that seeks to collect an amount not authorized by the debt agreement or permitted by law.   *See Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that the FDCPA "applies to the litigating activities of lawyers"); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1031–32 (9th Cir. 2010) ("We . . . conclude that a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of §§ 1692e and 1692f.").   If a prior court judgment were a *sine qua non* for relief to be "permitted by law," a person would not be able to file a lawsuit seeking prejudgment interest unless she had already obtained a judgment awarding prejudgment interest.   Nothing in § 1692f(1) requires this Catch–22.

*Diaz*, 785 F.3d at 1330 ("just because prejudgment interest can be awarded if a plaintiff prevails in court does not mean the plaintiff was not entitled to prejudgment interest even before"); *see also Provo v. Rady Children's Hosp.-San Diego*, 2015 WL 3648845, at *2 (S.D. Cal. June 11, 2015) ("As the interest rate provision is enforceable under state law, this portion of Plaintiffs' [FDCPA and California Fair Debt Collection Practices Act] claim fails," wherein Plaintiffs alleged "that a debt collector is not entitled to add contractual interest charges to an outstanding debt without first obtaining a judgment.").   Indeed, Sivongxay presents no rebuttal or authority to counter the Ninth Circuit's persuasive reasoning, nor does Sivongxay offer any support to her assertion that her underlying creditors waived any claim to interest by not pursuing it before assigning collection efforts to MEDCAH.

Because MEDCAH properly applied the statutorily allowed rate of 10% interest per annum on Sivongxay's unpaid debts where the account had no stated interest rate, MEDCAH did not collect, or attempt to collect, unauthorized amounts and did not violate the FDCPA or HRS.

**B.  MEDCAH Properly Applied Interest At The Statutory Rate To The Cardiology Associates Accounts That Allowed For Recovery Of An Even Higher Interest Rate**

Sivongxay's service agreements with Cardiology Associates specified an interest rate equal to 18% per year on unpaid balances.   Rather than seek the 18% rate, however, MEDCAH instead chose to apply the lower statutory rate of 10% per

annum.   Sivongxay fails to establish that this decision to collect *less than* the amount authorized by the underlying agreement is a violation of the FDCPA or HRS.

Whether federal or state, the debt collection statutes are designed, in large part, to protect the consumer.   In this Circuit, that means the least sophisticated consumer.   *See Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).   The Court sees nothing remotely unfair, false, deceptive, misleading, oppressive or unconscionable about pursuing a debtor for less than what that debtor owes.   If a creditor or its assignee chooses to, in effect, compromise its debt in that fashion, even the least sophisticated debtor would presumably count her blessings, not, as Sivongxay does, complain.   *See, e.g., Youssofi v. Cmre Fin. Servs., Inc.,* 2016 WL 245849, at *3 (S.D. Cal. Jan. 21, 2016) ("The difficulty with Plaintiff's argument is that the practice of a debt collector to collect less interest than owed, is not an abusive practice.   Under these circumstances, the consumer actually benefits and Plaintiff simply fails to identify how this practice is unfair or unconscionable."); *Stratton v. Portfolio Recovery Assocs., LLC*, 171 F. Supp. 3d 585, 602–03 (E.D. Ky. 2016) (concluding that a debt collector did not violate the FDCPA when it attempted to collect interest at a rate lower than it was authorized to under the underlying agreement and under the applicable state usury statute); *Gates v. Asset Acceptance,*

*LLC*, 801 F. Supp. 2d 1044, 1048 (S.D. Cal. 2011) (No violation under 15 U.S.C. § 1692f because "[a]lthough the [debt collector] sought an incorrect rate of interest, it sought less interest than the amount owed.   Such a misstatement is not material."); *Lane v. Gordon*, 2011 WL 488901, at *1 (D. Or. Feb. 7, 2011) (finding that, under the 15 U.S.C. § 1692e, the defendant did not make a material misstatement of the amount owed when the "Defendant simply sought less [interest] in the complaint than the full amount due and owing").

In short, Sivongxay's claims fail to the extent she alleges violations based upon MEDCAH's attempts to collect interest at a rate below the contracted rate.

### C.   MEDCAH Did Not Violate The FDCPA Or HRS By Attempting To Collect Or Retain Prejudgment Interest At The Statutory Rate

Sivongxay's assertion that MEDCAH is not entitled to retain interest for itself, while remitting the principal amounts to the original creditor, is equally misplaced.   First, she provides zero support for these bare assertions.   Indeed, it appears that Sivongxay lacks standing to challenge the allocation of any interest collected as between MEDCAH and Sivongxay's original creditors.   Second, whether MEDCAH opts to write off the uncollected interest, retain the statutory interest, or collect interest at a rate less than that sought by the original creditor, none of these business judgments violate the FDCPA or related provisions of the HRS. MEDCAH's client agreements and commission payments have little bearing on MEDCAH's entitlement to pursue interest under state law or to this Court's

determination of whether MEDCAH violated 15 U.S.C. § 1692f(1) or any other provision of the FDCPA.   In fact, Plaintiff points to no "false, deceptive or misleading" representation in the collection of a debt or an "unfair or unconscionable collection practice" in violation of the FDCPA or any state statute.

In short, MEDCAH is entitled to summary judgment on Sivongxay's interest-related claims under federal and state law.   Accordingly, the Court grants MEDCAH's Motion as to Violations 1–3 of Count I and Violations 1–5 of Count II, and denies Plaintiff's Motion as to Count 1.

## II.     Sivongxay's Remaining FDCPA Claims Fail

MEDCAH is likewise entitled to summary judgment on Sivongxay's claims relating to both its account numbering system and its credit reports to Experian, as detailed below.

### A.     MEDCAH's Account Numbering System Is Neither Confusing, False, Nor Deceptive

Sivongxay alleges that MEDCAH violated the FDCPA by using its own account numbers on its correspondence with her, rather than the account numbers communicated to her by the original creditor.[9]   According to Sivongxay, the account ledger she received on June 24, 2016, which also included letters from the

---

[9]Count I, Violation 1, alleges false, deceptive, or misleading statements under FDCPA Section 1692e, including that "Defendant assigned new account numbers," which was misleading and confusing "as to which account it was collecting," Am. Compl. ¶¶ 68–69.

original creditors, was misleading because the ledger included both a "Client Reference #" and a "MEDCAH Account #," in addition to the name of the original creditor.   *See* Pl.'s Mem. in Opp'n at 11 (citing Ex. 4 to Am. Compl., Dkt. No. 28-4).   She contends that an unsophisticated debtor such as herself would be very confused because upon receipt of the ledger, she "would not know what such numbers mean."   *Id.*   Although the Court employs the objective "least sophisticated debtor" standard, Sivongxay herself does not purport to have been confused by the account numbering system in any particular communication from MEDCAH.

Section 1692e of the FDCPA broadly prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."   Generally, a debt collector's liability under Section 1692e of the FDCPA is an issue of law—the analysis is objective and "takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)).   Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, her interpretation of a collection notice cannot be bizarre or unreasonable. *See, e.g.*, *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 686 (D. Haw. 2017) (observing that "the least sophisticated debtor standard retains the concept of reasonableness so that a debt collector will not be held liable for 'bizarre or

idiosyncratic interpretations of debt collection notices'") (quoting *Goray v. Unifund CCR Partners, et al.*, 2007 WL 4260017, at *6 (D. Haw. Dec. 4, 2007) (some citations omitted)).

Freeman, MEDCAH's President, explains that the client reference numbers listed in the July 24, 2016 account ledgers are the account numbers assigned to Sivongxay's accounts by her original creditors.   Pl.'s Ex. 3, 8/2/17 Freeman Dep. Tr. at 40, Dkt. No. 67-3 (explaining that client reference numbers refer to the original account numbers assigned by the service provider); Pl.'s Ex. 4, 8/2/17 Freeman Dep. Tr. at 156–59, Dkt. No. 67-4 (explaining that, with respect to accounts from Waianae Coast Comprehensive Health Center, MEDCAH received separate accounts for collection with "encounter" numbers, not the original account number that Waianae Coast used for those accounts).   This account numbering system, objectively viewed from the perspective of the "least sophisticated debtor," is not "confusing" and one is not likely to be misled by MEDCAH's communications.

Indeed, another court in this district recently ruled that this type of account numbering practice does not violate the FDCPA.   *See Aldaya v. Encore Capital Group, Inc.*, 2017 WL 1055961, at *8 (D. Haw. Mar. 20, 2017) (holding "[a]s a matter of law, Defendants [did not] use[] false or deceptive means in assigning their own number to [the debtor's] account while also stating in the same communications

the original creditor and original account number"). In *Aldaya*, the debtor likewise claimed that the collector violated Section 1692e(10) by assigning her an account number not related to her original account number, and that as a result of the multiple account numbers listed, she was confused "as to what money she owe[d] on the account and to whom." *Aldaya*, 2017 WL 1055961, at *8. The district court rejected the debtor's FDCPA claim, holding that "[e]ven viewing the letters with the eyes of the least sophisticated debtor, this court cannot see how the letters to [plaintiff] were false, deceptive, or in any way misleading with respect to account numbers." *Id.* at *8. "As a matter of law," the *Aldaya* court concluded, "no reasonable juror could determine that Defendants used false or deceptive means in assigning their own number to her account while also stating in the same communications the original creditor and original account number." *Id.* at *8. This Court agrees with the reasoning of the district court in *Aldaya*.[10]

---

[10]It is not the case that MEDCAH elected to identify the original creditor, account, or debt owed inaccurately, such that the false representation would either thwart Sivongxay's ability to respond to the collection notice, or make it confusing and misleading as to how she could cure her debt. *Cf. Tourgeman v. Collins Fin. Servs., Inc.,* 755 F.3d 1109, 1122 n.10 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) ("[T]he FDCPA does not require that the original creditor be identified in collection letters sent to consumers—but where a debt collector has chosen to identify the original creditor, and has done so inaccurately, the false representation would likely thwart a consumer's ability to freely navigate a course of action in response to the collection notice."); *Heathman v. Portfolio Recovery Assocs., LLC,* 2013 WL 3746111, at *3 (S.D. Cal. July 15, 2013) (finding an FDCPA violation where the defendant filed a collection action against the debtor in state court but listed only the collection agency as the plaintiff and failed to identify the bank with which the debtor initially opened a credit account rendering the debtor "unable to verify the debt purportedly owed, much less attempt to resolve that debt directly and extrajudicially"); *Becker v. Genesis Fin. Servs.,* 2007 WL 4190473, at *6 (E.D. Wash. Nov. 21,

The fact that MEDCAH assigned its own account number to Sivongxay's unpaid debts is not false or deceptive because the collection notices included MEDCAH's account number, in addition to the account number provided by the original creditor, the name of the original creditor, and the amount of the principal owed on the original debt.   The Court finds that MEDCAH's account numbering system is not confusing, misleading, false or deceptive in violation of Section 1692e. Consequently, MEDCAH is entitled to summary judgment on this claim.

### B.   MEDCAH Did Not Report False Amounts To A Credit Bureau

Sivongxay contends that MEDCAH violated Sections 1692e and 1692e(2) "by adding interest to all of her accounts in its demands to her, removing the interest in its reporting to the credit bureaus, then adding it back in later."   Pl.'s Mem. in Opp'n at 2, Dkt. No. 67.[11]   The record is clear, however, that MEDCAH accurately reported to Experian the principal amounts owed on each of Sivongxay's accounts.

---

2007) (finding an FDCPA violation where the defendant sent a collection notice to the debtor providing two different addresses where the debtor should send her payments, therefore making it confusing and misleading where she could cure her debt).   MEDCAH's communications clearly identified the original creditor and the particular credit account, in addition to the MEDCAH account number.

[11]She also alleges that MEDCAH violated of Section 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false[.]"   She contends that MEDCAH "used false, deceptive and/or misleading representations where it demanded amounts in collection letters that differed from the amount reported to [Experian]."   Pl.'s Mem. in Supp. at 10, Dkt. No. 46.   Under Plaintiff's theory, "either the collection letters or the credit report contained false amounts of the debts Plaintiff allegedly owed."   *Id.*

Nothing was "falsely" reported.  Sivongxay appears to acknowledge this truth as to four of her five original creditors: "[t]hroughout its reporting of [her] accounts to Experian, [MEDCAH] accurately reported that only the principal amounts were due to those four creditors."  Pl.'s Reply at 11, Dkt. No. 79.  With respect to Cardiology Associates, however, Sivongxay contends that MEDCAH "should have been reporting gradually increasing balances for [her] debt . . . as it was accruing interest at a rate of 18% pursuant to its contract."  Pl.'s Reply at 11.  She further argues that, even if MEDCAH did not report false amounts to Experian with regard to Cardiology Associates, MEDCAH still violated the FDCPA "because the differing amounts owed listed in the Experian report and the collection letters" constitute "deceptive and/or misleading representations."  Pl.'s Reply at 12.  The Court disagrees.

First, MEDCAH reported to Experian the principal balance that Sivongxay owed on the underlying debt to Cardiology Associates, and her credit report reflects as much.  Cardiology Associates is correctly listed as the original creditor, the account name is correctly listed as MEDCAH Inc. (account number ending 7124), the account type is correctly listed as a "collection account," and the correct balance as of February 9, 2016 is listed as $100.  *See* Am. Compl., Ex. 3 at 3.  Although MEDCAH was entitled to collect interest based upon Sivongxay's underlying agreements with Cardiology Associates, MEDCAH accurately reported

Sivongxay's unpaid principal balances to Experian and did so consistently with respect to all of Sivongxay's five creditors.   There was nothing false or deceptive with respect to MEDCAH's credit reporting.

Second, MEDCAH did not violate the FDCPA—or any unspecified provision of the HRS—by seeking amounts in collection letters or on account summaries that differed from the amount reported to Experian.   Sivongxay cites no authority holding that a difference between otherwise accurate amounts reported to a credit bureau and amounts demanded in collection letters violates the FDCPA or state law. It was neither deceptive nor misleading to report to Experian the principal amount that Sivongxay owed on her original debts, which is the same principal balance reflected in MEDCAH's communications with Sivongxay.

Viewing the Experian credit report from the perspective of the least sophisticated debtor, MEDCAH's credit reporting practices were not false, deceptive, or in any way misleading, where it accurately and consistently reported all of the principal balances owed to both Sivongxay and to Experian.   MEDCAH is therefore entitled to summary judgment on Sivongxay's credit reporting claim.

## **CONCLUSION**

MEDCAH has met its summary judgment burden on all of Sivongxay's interest-related claims under the FDCPA and HRS.   Because the underlying agreements either did not provide a fixed rate of interest or provided for a higher

rate, MEDCAH did not violate federal or state law when it applied interest at the statutory rate of 10% per annum under HRS § 478-2.   Moreover, MEDCAH is entitled to summary judgment on Sivongxay's claims relating to MEDCAH's account numbering system and credit reporting practices.

The Court GRANTS Defendant's Motion for Partial Summary Judgment as to Violations 1–3 of Count I and Violations 1–5 of Count II (Dkt. No. 44) and DENIES Plaintiff's Motion for Partial Summary Judgment as to Violations 1–3 of Count I (Dkt. No. 46).

IT IS SO ORDERED.

DATED: November 7, 2017 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*Sivongxay v. Medcah, Inc.*, Civil No. 16-00415 DKW-KSC; **ORDER (1) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO VIOLATIONS 1–3 OF COUNT I AND AS TO VIOLATIONS 1–5 OF COUNT II; AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO VIOLATIONS 1–3 OF COUNT I**